IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § § | Criminal Action No. H-06-252 |
| ARNOLD WAYNE ROLLINGS | § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Defendant has filed a motion to suppress physical evidence and incriminating statements obtained in the course of defendant's custodial detention. There are disputes as to a few material facts, but the primary divide between the parties is the proper interpretation and application of *United States v. Innis*, 446 U. S. 291 (1980).

This Court believes *Innis* to have been incorrectly decided. Nonetheless, accepting the majority opinion as binding precedent – as this Court must – defendant's motion to suppress has to be denied. Indeed, the facts of the custodial detention of this case are substantially less troubling, and the alleged criminal conduct much less severe, than those of *Innis*.

I.   FACTS

Although the details of the relevant factual narrative are contested, the broad outlines are not.

At a few minutes after 3:00 p.m on February 7, 2006, two Houston Police Department officers were on vehicular patrol in a high-crime neighborhood. They observed a car, which they identified as a 2000 model year Toyota Solara parked in the 3400 block Green Street in Houston. There was conflicting testimony as to whether the Solara was blocking moving traffic and/or blocking the entrance to an adjacent convenience store.

The officers stopped their car behind the Solara, got out of the vehicle, and approached the Solara. The defendant was sitting in the front passenger seat of the Solara, conversing with an individual later identified as Zachery Johnson who was standing next to the passenger door of the Solara. As the officers walked up to the Solara, one of the officers saw a "dark-colored object" in defendant's right hand. As the officer approached the Solara, defendant "turned around and then he moved forward as well." Although the testimony is not absolutely clear, a fair inference is that the officer thought defendant was trying to hide the dark-colored object.

Looking into the Solara, the same officer said he saw traces of a green leafy substance on defendant's pants. Based on what he saw and based on an odor he detected, the officer believed the substance to be marijuana residue, and directed defendant to exit the Solara. Defendant was asked for identification and produced identification that included a photograph of a male other than the defendant, and which also turned out to be in another person's name. The officer checked and discovered that there were outstanding warrants in the other individual's name. When confronted with this evidence, and after being handcuffed, Defendant admitted his true name. Defendant was then placed in the back of the officers' car with Zachery Johnson.

The other passenger in the Solara was a female who had been sitting immediately behind defendant in the back seat. Because the young woman, subsequently identified as Brandy Domino, was "moving around a lot and [the officer] couldn't see her hands," she had been instructed "to keep still" while the officer interrogated defendant. After defendant was handcuffed and placed in the officers' car, Ms. Domino was asked to step outside of the Solara. Because the Solara was a two-door model, the officer had to push the back of the front passenger's seat forward. When he did so, the officer saw a firearm that was later identified as a Smith & Wesson .357 caliber. The firearm

was confirmed to be fully loaded and fully functional. It is the subject of this prosecution. At about the same time, the officer also discovered a baby bottle containing codeine.

The owner of the vehicle was then asked for consent to the search of the Solara which he gave. Domino, meanwhile, had been handcuffed behind her back, given *Miranda* warnings, and seated on a nearby curb. She was asked about the firearm and denied any knowledge of it. She remained handcuffed and on the curb for an extended period that may have been as long as forty-five minutes. During this period she became very emotional and started crying, both because of the inherently stressful nature of her detention, and because her young daughter was expecting Domino to pick her up from school, which was the reason for Domino's having sought a ride in the Solara.

During the period that Domino was handcuffed, on the curb, and being interrogated, Johnson and defendant remained handcuffed in the back seat of the officers' vehicle. There is conflicting testimony as to whether the owner of the vehicle was also in the back seat and whether those in the officers' vehicle could hear the questions being posed to Domino. In any event, no *Miranda* warnings were given to defendant.

It is also clear that, eventually, defendant said "the pistol's mine," or words to that effect. The officers testified that no questions concerning the firearm or anything else had been directed to Rollings except the initial questions about his identity. In his own testimony, however Rollings insisted that the officers did ask about the firearm, while he and others were in the officers' vehicle.

## II. ISSUES PRESNETED

Defendant makes three principal arguments in seeking suppression of the firearm and his incriminating statement. First, defendant argues that the officers had no right to approach the Solara. Secondly, no proof was ever adduced that there was marijuana on defendant's person or anywhere in the car. Finally, defendant contends that he was subject to a *de facto* custodial interrogation in violation of *Innis*.

## III. DISSCUSSION

The first two issues can be easily disposed of. Any private citizen could have walked up to the Solara and viewed what was inside. The fact that police officers did so is not a violation of the Fourth Amendment. *Texas v. Brown,* 460 U.S. 730 (1983); *Coolidge v. United States*, 403 U.S. 443, 465 (1971). Secondly, although defendant is correct that the substance that was seen on defendant's pants was never tested and shown to be marijuana, the officer's belief that it was marijuana, coupled with his having detected the odor of marijuana, would certainly constitute reasonable suspicion for additional inquiry, even without his having been able to identify the "dark object" in defendant's right hand that defendant was apparently trying to hide. *United States v. Arvizu,* 534 U.S. 266, 275-77 (2002).

The third issue is a closer call. *Miranda* and its many progeny make clear that custodial interrogation must be preceded by warnings that the suspect has the right to remain silent, to see a lawyer, and to be notified that any statements he does make can and will be used against him. *Miranda v. Arizona,* 384 U. S. 436 (1966). Further, *Innis* makes clear that custodial interrogation can occur even without express questioning of the suspect.

In this instance, all are agreed that defendant was definitely in custody at all material times. It is further agreed that defendant had not received *Miranda* warnings at the time he admitted to owning the firearm. Defendant argues forcefully that the interrogation of Domino also constituted interrogation of him and that, as a result, his admission must be suppressed.

To analyze this argument, *Innis* must be considered in some detail. In that case, a taxicab driver who had been robbed by a man with a sawed-off shotgun identified a photo of defendant as his assailant. Shortly thereafter, a police officer saw defendant on the street, arrested him, and advised him of his rights under *Miranda*. When other officers arrived on the scene, defendant was twice again advised of his *Miranda* rights, stated that he understood his rights, and wanted to speak to a lawyer.

Defendant was then placed in a police vehicle to be driven to the central station in the company of three officers, who were instructed not to question defendant or intimidate him in any way. While en route, two of the officers engaged in a conversation between themselves about the missing shotgun. One of the officers stated that there were "a lot of handicapped children running around in this area" because a school for such children was located nearby, and "God forbid one of them might find a weapon with shells and they might hurt themselves." Defendant then interrupted the conversation to say that the officers should turn the car around so he could show them where the gun was located. Upon returning to the scene of the arrest where a search for the shotgun was in progress, defendant was again advised of his *Miranda* rights, replied that he understood those rights, but that he "wanted to get the gun out of the way because of the kids in the area in school," and then led the police to the shotgun. Before trial on charges of kidnapping, robbery, and murder of another taxicab driver, defendant moved to suppress the shotgun and the statements defendant had made to

the police.

The Supreme Court held that *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. The Court concluded that, on the facts before them, defendant had not been subjected to either.

There were two, strong dissenting opinions. In his dissent, Justice Stevens noted that the officer who raised the concern about the handicapped children might have 1) directly asked defendant about the shotgun; 2) told the other officers that, if the man in the back seat of the police car would tell them where the shotgun is located, handicapped children can be protected; or 3) say what he, in fact, had said. In Justice Stevens' opinion, all three of these approaches constituted interrogation.

This court finds persuasive this analysis. However, it is the majority opinion and not the dissent that binds this court. And, if the shotgun and the incriminating statements in *Innis* were not suppressed then, *a fortiori,* the firearm and incriminating statements in this case should not. In weighing the credibility of the different witnesses, this court is satisfied that defendant was never directly asked whether he owned the firearm. Beyond that, leaving aside the dispute as to whether defendant could even hear the interrogation of Domino, the tacit pressure brought to bear upon defendant was much less than that in *Innis*. At the time of defendant's admission, the firearm in question had been secured and there was no danger of a handicapped child, or anyone else, discharging it accidentally. Defendant was seeking simply to exonerate a woman from a gun charge from which she would, almost certainly, have been exonerated anyway, not to protect innocent children. Likewise, given the presence of other witnesses and the means of tracing gun ownership, defendant – as he undoubtedly understood – was only confessing to a crime with which he would

have been charged anyway. The court concludes that defendant, especially after having already misrepresented his identity to law enforcement, was in all likelihood more motivated by concern over his own welfare than any concern for Domino, whom the testimony reflects was hardly known to him.

### IV. CONCLUSION

For all the foregoing reasons, the motion to suppress is **DENIED.**

**IT IS SO ORDERED.**

SIGNED this ___7th___ day of May, 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE